UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN J. ALEXANDER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MUNGUIA, et al.,<br><br>　　　　Defendants. | No.  2:21-cv-01390-KJM-CKD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case is proceeding on plaintiff's second amended complaint alleging an Eighth Amendment excessive force claim against defendants Munguia and Rodriguez and a First Amendment retaliation claim against defendant Britton. Currently pending before the court are cross motions for summary judgment. ECF Nos. 39, 46. For the reasons explained below, the undersigned recommends granting defendants' motion for summary judgment and denying plaintiff's partial motion for summary judgment.

### I.    Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record…." Fed. R. Civ. P. 56(c)(1)(A).

1

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475

U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party.  Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).  In adjudicating cross-motions for summary judgment, the district court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." A.C.L.U. of Nevada v. City of Las Vegas, 466 F.3d 784, 790–91 (9th Cir. 2006) (citation omitted).

**II.   Allegations in the Second Amended Complaint[1]**

On October 5, 2020, plaintiff was an inmate in the psychiatric security housing unit ("PSU") at California State Prison-Sacramento.  After plaintiff papered over his cell window, a correctional officer activated his personal alarm and reported that there was an unresponsive inmate on the unit.  Multiple officers responded to plaintiff's cell.  Defendant Rodriguez responded with an MK-9 pepper spray fogger in his hand while defendant Britton arrived with a modified food port device, which looks like a mailbox, but is designed to prevent inmates from having the ability to assault staff while a safety check is performed.  Defendant Britton placed the modified food port on plaintiff's cell, opened the food port slider, and saw plaintiff.  When the officer tried to close the food port slider, plaintiff placed his hand in the modified food port box to prevent it from being closed.  Defendant Munguia told plaintiff to remove his hand or he would

---

[1] A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000).

be pepper sprayed.  Within 45 seconds of putting his hand inside the modified food port, plaintiff was pepper sprayed in the face by defendant Rodriguez who deployed a 5 second burst of spray from his MK-9 fogger.

Plaintiff alleges that he did not verbally threaten any officers and was not a danger to them when the pepper spray was deployed "because the food port was completely sealed off and was not capable of being opened."  ECF No. 14 at 15.  Instead, he asserts that he was pepper sprayed in order to teach him a lesson based on a comment made by defendant Britton that he should "stop snitching" and messing "up our program, or it will happen again."  ECF No. 14 at 15.  Based on that comment, plaintiff was afraid to leave his cell to be decontaminated.  As a result, plaintiff suffers lingering medical problems due to the pepper spray including shortness of breath and pain in his lungs and chest.

### III.    Plaintiff's Partial Motion for Summary Judgment

Plaintiff filed a partial summary judgment motion regarding the excessive force claim against defendants Munguia and Rodriguez.  ECF No. 39.  Plaintiff generally asserts that "way more care and patience" should have been used with him because he is a mentally ill inmate with developmental disabilities who is court-ordered to take psychiatric medication.  ECF No. 39 at 4-5, 10.  Specifically, plaintiff contends that defendant Rodriguez pepper sprayed plaintiff only five seconds after he was ordered to remove his hand from the food port tray.  ECF No. 39 at 5.  That was not enough time to comply with the order from defendant Munguia.  As the supervisor, it was defendant Munguia's job "to see to it that if any force was to be utilized that it was done in an appropriate fashion."  Id. at 17.

### IV.    Defendants' Cross Motion for Summary Judgment

Defendants filed a combined opposition to plaintiff's partial motion for summary judgment as well as a cross summary judgment motion.  ECF No. 46.  Defendants first contend that the excessive force claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), because plaintiff was found guilty of a Rules Violation Report ("RVR") for assault on a peace officer based on the October 5, 2020, incident.  ECF No. 46-1 at 7.  Defendants argue that Heck prevents a state prisoner from pursuing a § 1983 action that, if successful, would necessarily imply the

4

invalidity of a disciplinary conviction resulting in the loss of good time credit. ECF No. 46-1 at 13. Turning to the merits, defendants assert that the undisputed material facts demonstrate that defendants Munguia and Rodriguez did not use excessive force against plaintiff. ECF No. 46-1 at 16-27. Defendants also assert that plaintiff failed to exhaust his administrative remedies for the retaliation claim against defendant Britton and that he is entitled to summary judgment on the merits in light of the surveillance video of the incident. ECF No. 46-1 at 15-16, 28-29. Lastly, defendants contend that they are entitled to qualified immunity because their conduct did not violate clearly established federal law. ECF No. 46-1 at 29-30.

Plaintiff filed his formal opposition to defendants' motion for summary judgment on July 23, 2023. ECF No. 51. Although it was untimely filed, the court has considered this opposition because it narrows the scope of the disputed issues in this case. Plaintiff concedes that the claim against defendant Britton was not properly exhausted. ECF No. 51 at 21. With respect to defendants Munguia and Rodriguez, plaintiff counters that the Heck bar does not apply to his excessive force claims because he was only convicted of a prison disciplinary violation. ECF No. 51 at 9-10. Based on the short period of time between the withdrawal of the modified food port and the use of pepper spray, plaintiff argues that "it is very clear that this force was premeditated and applied with malice." ECF No. 51 at 13. Plaintiff also challenges the lack of evidence in the record demonstrating that a modified food port box can be used as a weapon from an inmate locked inside a cell. ECF No. 51 at 14. To support this point, plaintiff emphasizes that defendants did not submit a photo of the modified food port box that was used in this case. ECF No. 51 at 15. According to plaintiff, "[t]he evidence presented by the defendants does not prove that plaintiff reach[ed] for anyone, or the food port box as it was being removed from his door." ECF No. 51 at 16. Plaintiff submits that the video tape evidence in this case demonstrates that "there was no real attempt made by staff to temper or defuse[sic] the situation." ECF NO. 51 at 16. Defendant Munguia's threat to use pepper spray if plaintiff did not remove his hand was what set the constitutional violation in motion in this case. Id. at 16-17. Based on these disputed factual issues, plaintiff asserts that summary judgment should be denied as to defendants Munguia and Rodriguez. With respect to defendants' qualified immunity argument, plaintiff

contends that "it has been ruled unconstitutional to [pepper] spray a mentally ill inmate because they are responding to stimuli caused by their mental health disorder." ECF No. 51 at 22. However, he does not cite to any case law supporting this argument.

By way of reply, defendants point out that plaintiff does not dispute that he lost sentencing credit as a result of his disciplinary conviction for the events of October 5, 2020. ECF No. 55 at 4. Defendants argue that the use of force by defendant Rodriguez "is necessarily in conflict with the assault finding" against plaintiff in his prison disciplinary proceeding rendering his § 1983 action barred by Heck. ECF No. 55 at 4. Applying the factors governing excessive force claims in Hudson v. McMillan, 503 U.S. 1 (1992), defendants assert that there is no reliable inference that the pepper spray was applied maliciously and sadistically by defendant Rodriguez. ECF No. 55 at 5-10. Lastly, since plaintiff "presents no evidence that Sergeant Munguia either applied force or directed that force be applied," he is entitled to summary judgment. ECF No. 55 at 11.

## V.    Undisputed Material Facts[2]

On October 5, 2020, plaintiff, who was housed in the psychiatric services unit ("PSU") at CSP-Sacramento, placed a sign in his cell's window indicating that he was suicidal. Plaintiff's Statement of Undisputed Facts ("PSUF") at Nos. 6-7. He covered all of the windows in his cell which prompted a wellness check to be performed. ECF No. 14 at 12; Defendants' Statement of Undisputed Facts ("DSUF") at No. 3. Correctional Officers Britton and Rodriguez were among the CSP-Sac prison staff who responded to plaintiff's cell door for a wellness check. DSUF at No. 5. Lieutenant Munguia was the supervisor who responded to the same location. PSUF at No. 4.

Defendant Britton arrived with a modified food port box, which is a device that attaches to the outside of a cell door and has a plexiglass viewing port. DSUF at No. 6. He attached it to plaintiff's cell door and opened the cell's food port slider. DSUF at No. 7; PSUF at No. 2. When defendant Britton attached the modified food port box to plaintiff's cell door, defendant Rodriguez unholstered his MK-9 can of pepper spray. ECF No. 46-4 at No. 7 (Declaration of N.

---

[2] All facts are undisputed unless otherwise indicated.

6

1   Rodriguez). As soon as the food port slider opened, plaintiff placed his hand in the opening of
2   the food port which prevented staff from closing it. DSUF at No. 7. Plaintiff was attempting to
3   get the attention of a correctional sergeant. DSUF at Nos. 4. Prison staff ordered plaintiff to
4   remove his hand from the food port and warned him that they would use pepper spray if he failed
5   to comply. DSUF at No. 8. Plaintiff responded that if he was pepper sprayed, he would sue.
6   Plaintiff's Deposition at 66:1-2.

7   Seconds later, defendant Britton removed the modified food port from plaintiff's cell door
8   and defendant Rodriguez immediately sprayed plaintiff with a burst of pepper spray for 5
9   seconds. DSUF at No. 10. At the time that defendant Britton removed the modified food port,
10  he observed that plaintiff's hands were empty. ECF No. 46-4 at 78 (Declaration of A. Britton).
11  The parties agree that the modified food port was only placed on plaintiff's cell door for a total of
12  45-60 seconds. PSUF at No. 2.

13  According to defendant Rodriguez, he observed plaintiff "quickly reach outward through
14  the open food port with an open hand in the direction of Officer Britton" at the time that the
15  modified food port had been removed from his cell door. ECF No. 46-4 at 74-75 (Declaration of
16  N. Rodriguez). Defendant Rodriguez interpreted this movement by plaintiff as an attempt to
17  either grab defendant Britton or the modified food port box that Britton was holding. ECF No.
18  46-4 at 75. According to defendant Rodriguez, he discharged the single burst of pepper spray
19  "[t]o interrupt [p]laintiff's action and [to] prevent a possible attack on Officer Britton." Id.

20  Plaintiff denies reaching out for defendant Britton to try to hurt him, but he admits that he
21  may have changed the position of his hands or moved them when the modified food port was
22  removed from his cell door. DSUF at No. 13; Plaintiff's Deposition, at 71:7-18.

23  The parties agree that plaintiff's right hand and arm were struck with pepper spray. DSUF
24  at 19. After being pepper sprayed, plaintiff retreated into his cell which allowed a correctional
25  officer to close the food port slider on his cell door. DSUF at No. 20. Defendant Munguia
26  offered plaintiff the ability to decontaminate from the pepper spray outside of his cell, but
27  plaintiff declined because he thought he would be safer in his cell away from prison staff. DSUF
28  at No. 15; ECF No. 46-4 at 82 (Declaration of M. Munguia).

Plaintiff was issued a Rules Violation Report for assault on a Peace Officer by means not likely to cause great bodily injury in violation of California Code of Regulations, tit. 15 § 3005(d)(1) for "quickly open[ing] his right hand and rapidly mov[ing] it outward toward Officer Britton and the Modified Food Port Sally Port box."  DSUF at No. 1; ECF No. 46-4 at 11 (RVR).  He was found guilty of this disciplinary violation on October 30, 2020 and assessed a loss of 61 days of sentencing credit.  Id.

The events outside of plaintiff's cell door on October 5, 2020 were captured by surveillance video.  DSUF at No. 36.

### VI.  Legal Standards

#### A. Excessive Force

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillan, 503 U.S. 1, 7 (1992).  The court's inquiry into an excessive force claim focuses on the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (1992) (quotation marks and citations omitted).  While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it.  Hudson, 503 U.S. at 7.  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency in violation of the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 327 (1986).  The use of pepper spray implicates the excessive use of force in the Eighth Amendment context.  See Clement v. Gomez, 298 F.3d 898, 903–04 (9th Cir. 2002); DeSpain v. Uphoff, 264 F.3d 965, 978 (10th Cir. 2001).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force causes should be granted sparingly."  Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (citation omitted).

**B. Heck Bar**

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a convicted criminal may not bring a civil suit questioning the validity of his conviction until he has had the conviction set aside. In Smithart v. Towery, 79 F.3d 951, 952-53 (9th Cir. 1996), the Ninth Circuit held that where "a successful section 1983 action for excessive force would not necessarily imply the invalidity of [plaintiff's] arrest or conviction, Heck does not preclude [plaintiff's] excessive force claim."

**VII. Analysis**

**A. Exhaustion of Administrative Remedies**

Turning first to the uncontested issue in this case, the undersigned finds that plaintiff did not properly exhaust his retaliation claim against defendant Britton as required by the Prison Litigation Reform Act. As a result, defendant Britton is entitled to summary judgment based on plaintiff's failure to exhaust his administrative remedies prior to filing suit. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino v. Baca, 747 F.3d 1162, 1168-69 (9th Cir. 2014). Therefore, the undersigned recommends dismissing the First Amendment retaliation claim against defendant Britton without prejudice.

**B. Excessive Force**

Turning to the claim against defendant Munguia, the undersigned finds that there is no genuine issue of material dispute related to his involvement in the use of pepper spray in this case. There is no evidence before the court that defendant Munguia ordered plaintiff to be pepper sprayed. Plaintiff merely seeks summary judgment with respect to defendant Munguia for warning plaintiff that pepper spray would be used if he failed to comply with the order to release the food port.[3] However, that is insufficient as a matter of law to establish liability under § 1983.

---

[3] Even assuming that plaintiff is proceeding under a theory that defendant Munguia was an

9

1    See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (emphasizing that "[a] supervisor is only
2    liable for constitutional violations of his subordinates if the supervisor participated in or directed
3    the violations, or knew of the violations and failed to act to prevent them.") Fayle v. Stapley, 607
4    F.2d 858, 862 (9th Cir. 1979) (explaining that there is no vicarious liability for state officials who
5    act in a supervisory capacity over lower officials). As there are no material questions of fact in
6    dispute concerning defendant Munguia's involvement, he is entitled to summary judgment.
7    Therefore, the undersigned recommends granting defendants' motion for summary judgment with
8    respect to the excessive force claim against defendant Munguia.

     **C. Heck**

10   Lastly, the court turns to defendant Rodriguez's assertion that the excessive force claim
11   against him is barred by Heck. There is no genuine issue of material dispute concerning
12   plaintiff's disciplinary conviction for assault that resulted in the loss of 61 days of good time
13   credit. The disciplinary conviction was based on the report of defendant Rodriguez alone. See
14   ECF No. 46-4 at 16 (RVR). Plaintiff does not dispute this. In this case, the issue before the court
15   is whether defendant Rodriguez used pepper spray in a good-faith effort to maintain or restore
16   discipline, or maliciously and sadistically to cause plaintiff harm. Since this use of pepper spray
17   occurred within seconds of plaintiff's conduct that resulted in his disciplinary conviction for
18   assault on a peace officer, there is no temporal or conceptual line that can be drawn to separate
19   the actions of plaintiff from the actions of defendant Rodriguez for purposes of applying Heck. If
20   the allegations in the amended complaint are accepted as true, then plaintiff cannot be guilty of
21   assault on a peace officer rendering his disciplinary conviction invalid. See Burton v.
22   Chenoweth, No. 2:14-cv-2331-KJN-P, 2015 WL 7758476 at *3 (E.D. Cal. Dec. 2, 2015) (finding
23   excessive force claim barred by Heck where "[p]laintiff's disciplinary conviction and his
24   excessive force claim arise from the same incident, and the two versions of events are entirely
25   inconsistent with one another."). "[A] plaintiff's claims are barred when they depend on a theory

---

integral participant in the use of excessive force, his actions still must have contributed "in some meaningful way" to the constitutional violation. See Boyd v. Benton Count, 374 F.3d 773, 780 (9th Cir. 2004). On this record, the undersigned concludes that there is no genuine issue that defendant Munguia contributed in a meaningful way to the asserted Eighth Amendment violation.

1  that calls into question whether he committed the offense for which he was convicted." Smith v.
2  Hernandez, No. 1:16-cv-01267-DAD-SAB, 2018 WL 6809560 at *5 (E.D. Cal. Dec. 27, 2018).

3  Plaintiff's only argument in response is that Heck does not apply to prison disciplinary
4  convictions. However, that argument is foreclosed by Edwards v. Balisok, 520 U.S. 641, 646
5  (1997), which extended the Heck bar to prison disciplinary convictions if plaintiff's claim would
6  necessarily imply the invalidity of his loss of good time credits.

7  For all these reasons, the undersigned recommends granting defendant Rodriguez's
8  motion for summary judgment on the basis of Heck. Therefore, defendant Rodriguez should be
9  dismissed without prejudice. See Washington v. Los Angeles Cty. Sheriff's Dep't, 833 F.3d 1048,
10 1055 (9th Cir. 2016) (explaining that a Heck dismissal is made without prejudice).

11 In light of this analysis and in the interests of judicial economy, the undersigned declines
12 to address defendants' remaining argument in support of their summary judgment motion based
13 on qualified immunity.

14 Accordingly, IT IS HEREBY RECOMMENDED that:

15 1. Defendants' motion for summary judgment (ECF No. 46) be granted.

16 2. Defendants Britton and Rodriguez be dismissed from this action without prejudice.

17 3. Defendant Munguia be dismissed from this action with prejudice.

18 4. Plaintiff's partial motion for summary judgment (ECF No. 39) be denied for the
19    reasons indicated herein.

20 These findings and recommendations are submitted to the United States District Judge
21 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days
22 after being served with these findings and recommendations, any party may file written
23 objections with the court and serve a copy on all parties. Such a document should be captioned
24 "Objections to Magistrate Judge's Findings and Recommendations." Any response to the
25 /////
26 /////
27 /////
28 /////

objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 7, 2023

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/alex1390.msj.ex.force.CJRA